IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TYLER PITMAN and LILIANA DAMASCHIN,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES ("USCIS"); *et al.*,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER VACATING THE BIA'S ORDER AND ORDERING DEFENDANTS TO APPROVE I-130 PETITION**<br><br>Case No.  2:17-cv-0166<br><br>Judge Clark Waddoups |

<u>Introduction</u>

This case concerns the denial of a Form I-130 Petition for Alien Relative filed by Plaintiff Tyler Pitman on behalf of Plaintiff Liliana Damaschin. (Compl. ¶ 1, ECF No. 1 at 2.) Mr. Pitman's I-130 Petition was denied by United States Citizenship and Immigration Services (USCIS) and that decision was affirmed by the Board of Immigration Appeals (BIA). Plaintiffs seek review of the agency's decision pursuant to the Administrative Procedure Act (APA). (*See* Compl. ¶ 12, ECF No. 1 at 3.)

Plaintiffs filed an Opening brief pursuant to DUCivR 7-4(a)(5)(D), seeking to have this court "vacate the decision by USCIS denying" Mr. Pitman's petition and seeking an order that that "petition be approved." (ECF No. 89 at 39.) Defendants filed an Answer Brief pursuant to DUCivR 7-4(a)(5)(E) seeking to have the court "find that the Board and USCIS did not act arbitrarily or capriciously, or otherwise not in accordance with law when they denied the Pitman Petition." (ECF No. 90 at 39.) Plaintiffs filed a Reply brief in accordance with DUCivR 7-

4(a)(5)(F), seeking to have the court "vacate the decisions by the BIA and USCIS denying the Pitman petition and order that the petition be approved." (ECF No. 91 at 20.)

For the reasons set forth below, the court finds that the BIA's Order was arbitrary and capricious. Because USCIS has already recognized Plaintiffs' marriage as valid, the court orders Defendants to approve Plaintiff Pitman's I-130 petition on behalf of Plaintiff Damaschin.

<u>Factual Background</u>

The court "assume[s] the parties' familiarity with the underlying facts and procedural history of this case." *Singh v. Bd. of Immigration Appeals*, 724 F. App'x 36, 37 (2d Cir. 2018). The court discusses the relevant facts in its analysis.

<u>Standard of Review</u>

Mr. Pitman seeks relief under the Administrative Procedure Act (APA). A reviewing court must hold unlawful and set aside any agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "When an agency does not comply with its own regulations, it acts arbitrarily and capriciously." *New Mexico Farm & Livestock Bureau v. United States Dep't of Interior*, 952 F.3d 1216, 1231 (10th Cir. 2020); *see also Cherokee Nation of Okla. v. Norton*, 389 F.3d 1074, 1078 (10th Cir. 2004) ("[The APA] require[s] agencies, on pain of being found to have acted arbitrarily and capriciously, to comply with their own regulations."). "[A]lthough the APA's arbitrary and capricious standard is ordinarily a deferential one, such deference is not unfettered nor always due." *Norton*, 389 F.3d at 1078.

For "a court to hear a case like this pursuant to the APA, there must be '*final agency action* for which there is no other adequate remedy in court.'" *Mamigonian v. Biggs*, 710 F.3d 936, 941 (9th Cir. 2013) (quoting 5 U.S.C. § 704)). In this context, "[t]he BIA's decision, and

not the decision of USCIS, is the final agency action." *Akopyan v. Sessions*, No. 17-CV-01724-RBJ, 2018 WL 6249885, at *2 (D. Colo. Nov. 29, 2018).

A single BIA member is permitted to issue a final order. *See* 8 C.F.R. § 1003.1 ("If the Board member to whom an appeal is assigned determines, upon consideration of the merits, that the decision is not appropriate for affirmance without opinion, the Board member shall issue a brief order affirming, modifying, or remanding the decision under review, unless the Board member designates the case for decision by a three-member panel . . . .")). While this court reviews the BIA's decision as the final agency decision, it "may consult the USCIS's decision for the grounds in the BIA's decision." *Akopyan v. Barr*, 786 F. App'x 829, 831 (10th Cir. 2019) (citing *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006) for the proposition that that case noted that in the Tenth Circuit, a court "may consult an immigration judge's decision for a 'more complete explanation' when reviewing a brief order issued by the BIA affirming the immigration judge.")).

Statutory and Regulatory Background

"When an American citizen marries a noncitizen, the citizen may petition for lawful permanent residency for the spouse." *Zerezghi v. United States Citizenship & Immigration Servs.*, 955 F.3d 802, 804 (9th Cir. 2020) (citing 8 U.S.C. §§ 1151, 1154)). "The process begins when the citizen spouse files a Form I-130 Petition for Alien Relative (I-130), which acts as a request for immigration authorities to formally recognize the validity of the marriage." *Id.* (citation omitted). "[R]egardless of the strength of the current marriage, 'no petition shall be approved' if USCIS determines that the noncitizen spouse *previously* entered into a marriage 'for the purpose of evading the immigration laws.'" *Id.* (emphasis in original) (quoting 8 U.S.C. § 1154(c). In order to determine whether the BIA's decision affirming the USCIS's decision was

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," this court must first examine the relevant statute, regulations, and the interpretations of those regulations.

The relevant statute is 8 U.S.C. § 1154(c). The Board of Immigration Appeals, when discussing this statute, cites to the Immigration and Nationality Act (INA) rather than the United States Code Section number. The parallel citation to 8 U.S.C. § 1154 is INA § 204.[1]

8 U.S.C. § 1154(c) provides, in relevant part that "no [I-130] petition shall be approved if . . . the alien has previously . . . sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States . . . by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws . . . ." 8 U.S.C. § 1154. While the statute indicates this authority belongs to the Attorney General, it is well-established—and no party disputes—that a Field Office Director for United States Citizenship and Immigration Service (USCIS) is authorized to make this determination. *See Matter of P. Singh*, 27 I. & N. Dec. 598, 602 (BIA 2019) ("In deciding if a marriage is a sham, the **Director** must examine the record to determine if there is substantial and probative evidence of fraud to warrant the denial of a visa petition under section 204I of the Act." (bold added)).) But the statute does not explain how a Field Office Director, acting on behalf of the Attorney General, determines whether a beneficiary's prior marriage was entered into for the purpose of evading the immigration laws. Regulations, and agency interpretations of those regulations, provide those details.

8 C.F.R. § 204.2(a)(1)(ii) provides:

Section 204(c) of the Act prohibits the approval of a visa petition filed on behalf of an alien who has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws. The director will deny a petition for immigrant visa classification filed on behalf of any alien for whom there is **substantial and probative evidence** of such an attempt or conspiracy, regardless

---

[1] The court will cite to the US code unless quoting a source that references the parallel INA provision.

of whether that alien received a benefit through the attempt or conspiracy. Although it is not necessary that the alien have been convicted of, or even prosecuted for, the attempt or conspiracy, the evidence of the attempt or conspiracy must be contained in the alien's file.

8 C.F.R. § 204.2(a)(1)(ii) (bold added)).

"The phrase 'substantial and probative evidence' has never been included in [the statute] since its enactment." *Matter of P. Singh*, 27 I. & N. Dec. 598, 602 (BIA 2019). Indeed, "[t]he legislative history of section 204(c) does not indicate what evidentiary standard Congress intended to apply; nor does it explain why Congress did not specify a standard." *Id*. at 602 n. 4.

"The term first appeared in *Matter of Agdinaoay*, 16 I&N Dec. 545, 546 (BIA 1978), where [the Board of Immigration Appeals] held that '[a] finding that section 204(c) does apply to an alien must be based on evidence that is substantial and probative.'" *Id*. at 602. "Citing *Matter of Agdinaoay*, [the Board of Immigration Appeals] next applied the term in *Matter of Tawfik*, 20 I&N Dec. 166, 167 (BIA 1990), holding that evidence of an attempt or conspiracy to evade the immigration laws must be 'substantial and probative.'" *Id*.

The Board of Immigration Appeals held, as early as 1988, that the burden "for purposes of section 204(c)(1)" initially lies with the Government—not with the petitioner. *See Matter of P. Singh*, 27 I. & N. Dec. 598, 605 (BIA 2019) ("Moreover, in regard to where the burden lies for purposes of section 204(c)(1), we have held that 'where there is evidence in the record to indicate that the beneficiary has been [involved] in a marriage fraud conspiracy, *the burden shifts to the petitioner* to establish that the beneficiary did not seek nonquota or preference status based on a prior fraudulent marriage.'") (emphasis in original) (quoting *Matter of Kahy*, 19 I&N Dec. 803, 806-07 (BIA 1988)).

It is well established under *Matter of Kahy* that "[t]he initial burden of proof is on the government." *Zerezghi v. United States Citizenship & Immigration Servs.*, 955 F.3d 802, 805

(9th Cir. 2020) (citing *Kahy*, 19 I&N Dec. at 806–07)). "If the government finds that there is 'substantial and probative evidence' of marriage fraud, it issues a Notice of Intent to Deny the immigration petition." *Id*. "The burden **then** shifts to the petitioner to rebut that finding." *Id*. (bold added) (citing *Kahy*, 19 I&N Dec. at 806–07)). "If the petitioner cannot rebut the charge to the BIA's satisfaction, the petition is denied." *Id*.[2]

Analysis

As explained below, (I) the BIA's Order was arbitrary and capricious and (II) because USCIS is not entitled to a second bite at the apple to meet its burden of production to shift the burden to Plaintiffs, and because USCIS has already recognized Plaintiffs' marriage as valid, the court orders Defendants to approve Plaintiff Pitman's I-130 petition on behalf of Plaintiff Damaschin.

I.    The BIA's Order Was Arbitrary and Capricious

The BIA's Order affirming the USCIS's Director's decision was arbitrary and capricious because it failed to recognize that the Director never "found" substantial and probative evidence of marriage fraud in the Notice of Intent to Deny ("NOID"). Instead, at the time the Director issued the NOID, she was under the mistaken belief that Mr. Pitman bore the burden, under a clear and convincing standard of proof, to "show" that Ms. Damaschin's prior marriage to Mr. Barnes was "entered into in good faith and not for the purpose of evading immigration law." (AR 343, ECF No. 48-5 at 25.) The Director's failure to make findings of substantial and probative evidence of marriage fraud in the NOID meant the burden never shifted to Mr. Pitman. Because

---

[2] Defendants agree with the burden shifting framework discussed above. (*See* ECF No. 90 at 22 ("If USCIS finds that a visa petition should be denied under 8 U.S.C. § 1154(c), and substantial and probative evidence supports that finding, the petitioner bears the burden of rebutting the finding and showing that the prior marriage was *bona fide*.") (citing 8 C.F.R. § 204.2(a)(1)(ii); *Tawfik*, 20 I. & N. Dec. at 167; *Matter of Kahy*, 19 I. & N. Dec. 803, 806 (BIA 1988)).

6

a shifting of the burden is a necessary step before USCIS can properly deny a petition under 8

U.S.C. § 1154(c), the BIA's decision affirming the Director's denial was a failure to follow its

own regulations and therefore arbitrary and capricious.

     In her NOID, the USCIS director dedicated nine pages to her "Evaluation of Evidence

and Intended Findings." (AR 343–351, ECF No. 48-5 at 25–33.) She began this section by

incorrectly stating that Mr. Pitman bore the burden to demonstrate that Ms. Damaschin's prior

marriage to Mr. Barnes was not fraudulent:

> To summarize the key legal considerations . . . because the beneficiary entered
> both marriages after she was in removal or deportation proceedings, a general
> prohibition against approval of her marriage-based visa petitions applies, and the
> presumption that the marriages are fraudulent must be overcome. INA §204(g); 8
> CFR 204.2(a)(iii). In order to overcome the general prohibition against approval
> of the visa petitions, the petitioner must establish that the bona-fide marriage
> exception applies. That is, *you must show that the marriages* were entered into in
> good faith and not for the purpose of evading immigration law. The 'clear and
> convincing' standard of proof applies to establish the bona-fides of a marriage
> entered into after the commencement of immigration proceedings. Matter of H-
> A., 22 I&N Dec. 728 (BIA 1999). The BIA has described the 'clear and
> convincing' standard as 'that degree of proof, though not necessarily conclusive,
> which will produce in the mind of the trier of fact a firm belief or conviction.'

(ECF No. 48-5 at 25 (emphases added).) Within this section, the Director had a subsection titled

"Barnes marriage," which in turn, had two subsections: "Prior judicial findings" and "USCIS

findings." (*See* AR 340; ECF No. 48-5 at 22.) A close examination of the section titled "USCIS

findings" makes clear that the Field Director did not make any findings in the NOID of

substantial and probative evidence of marriage fraud.

     The Field Director began the "USCIS findings" section by stating that "USCIS finds the

[prior] judicial findings in those decisions concerning the bona fides of the Barnes marriage are

certainly relevant to the section 204(c) analysis proper to USCIS."  (AR 347; ECF No. 48-5 at

29.) The Field Director continued: "After conducting an independent review of the evidence of

record in the beneficiary's file[,] USCIS also concludes that *the beneficiary has not met the clear and convincing standard of proof* in demonstrating the bona fides of her first marriage." (AR 347; ECF No. 48-5 at 29 (emphasis added) (citing *Matter of Tawfik* and *Matter of Isber*)). The preceding italicized language makes clear that the Field Director misunderstood the applicable burdens.

The Field Director's misunderstanding continued later in her USCIS findings section when she, citing *Matter of Phillis*, 15 I&N Dec. 395 (BIA 1975), stated that "when the parties did not reside together, the amount of evidence required to establish the bona fides of a marriage may be considerable." (AR 349–350, ECF No. 48-5 at 31–32.) She continued: "That 'considerable burden has not been met in this case thus far." (AR 349–350, ECF No. 48-5 at 31–32.) *Matter of Phillis* involved a single marriage between a United States petitioner and a beneficiary whom the petitioner claimed to have married. It did not involve a beneficiary who had been previously married, and who was facing a marriage fraud bar under 8 U.S.C. § 1154(c). In other words, because there was no prior marriage to examine, the Government in *Matter of Phillis* did not bear any initial burden of finding substantial and probative evidence that a prior marriage was fraudulent. The Field Director's statement is further evidence that she improperly shifted the burden of proof to the petitioner.

The Field Director concluded her "USCIS findings" section with the following:

> Due to the fact that documentary evidence of the marriage is lacking and the testimony has been inconsistent. *Accordingly, USCIS finds that the evidence submitted fails to meet the clear and convincing burden of proof that the beneficiary had a bona fide marriage to Mr. Barnes.* Rather, the marriage appears to have been a pretext entered into for immigration purposes only. As such, USCIS finds it appears that section 204(c) applies to bar approval of any subsequent visa petition for her.

(AR 349–350, ECF No. 48-5 at 32 (emphasis added).)

After finding that Mr. Pitman's marriage to Ms. Damaschin was found to be bona fide, the Field Director provided a conclusion to the NOID. (*See* AR 351, ECF No. 48-5 at 33.) In her conclusion, she again misunderstood the burden of proof:

> For the reasons outlined above, *USCIS finds that the beneficiary has not offered clear and convincing evidence in support of her **first** marriage.* Rather, USCIS finds that the evidence of that marriage lacking in consistency, and *indicative of* probable marriage fraud as prohibited under section 204(c) of the INA. Accordingly, USCIS finds that approval of your visa petition is barred under that section of law.

(AR 351, ECF No. 48-5 at 33 (emphases added).)

The Field Director's conclusion here is that Mr. Pitman's petition was barred under 8 U.S.C. § 1154(c) because she found that the evidence was "indicative" of marriage fraud. This conclusion rests upon at least two false premises.

First, the conclusion incorrectly assumed that it was completely Mr. Pitman's burden to demonstrate that 8 U.S.C. § 1154(c) did not bar approval of the petition. Nowhere in the Field Director's Decision did she recognize the burden shifting framework established by *Matter of Kahy*.

Second, the Field Director incorrectly assumed that evidence "indicative" of marriage fraud would be sufficient to bar Mr. Pitman's petition. The Field Director did not define the term "indicative of." One definition of "indicate" found in Merriam-Webster is "to be a sign, symptom, or index of." But the BIA has held that "to be 'substantial and probative,' the evidence must establish that it is more than probably true that the marriage is fraudulent." *Matter of P. Singh*, 27 I. & N. Dec. 598, 607 (BIA 2019). The Field Director having found "a sign" of marriage fraud does not amount to her having found that it was more than probably true that Ms. Damaschin's marriage to Mr. Barnes was fraudulent.

The burden of proof would only have shifted to Mr. Pitman *if* the Field Director found substantial and probative evidence of marriage fraud in the NOID. *See Zerezghi* 955 F.3d at 805 ("If the government finds that there is 'substantial and probative evidence' of marriage fraud, it issues a Notice of Intent to Deny the immigration petition. The burden then shifts to the petitioner to rebut that finding."); *see id*. at 813 ("The government acknowledges that it bears the initial burden of proof. If it produces substantial and probative evidence of marriage fraud, the burden shifts to the petitioner to rebut the allegation."). Having made no findings of substantial and probative evidence of marriage fraud in the NOID, the burden never shifted to Mr. Pitman. He had no findings to rebut.

In Mr. Pitman's response to the NOID, Mr. Pitman recognized that the Field Director had "applied the incorrect standard of proof" to Ms. Damaschin's marriage to Mr. Barnes. (AR 244, ECF No. 48-3 at 25.)

In response to this argument, the Field Director, in her Decision denying the petition, "condede[d] that the clear and convincing standard applies to the beneficiary's current marriage in proceedings only, not to the beneficiary's prior marriage . . . ." (AR 226, ECF No. 48-3 at 7.) And the Field Director acknowledged "that the substantial and probative burden of proof applies to USCIS findings under INA 204(c)." (AR 226, ECF No. 48-3 at 7.) The Field Director even recognized that "[w]here there is 'substantial and probative evidence' of prior marriage fraud in the record, the burden **then** shifts to the petitioner to overcome this evidence." (AR 221, ECF No. 48-3 at 2 (bold added).) Having been corrected by Mr. Pitman's counsel as to the correct standard, the Field Director concluded her Decision by stating:

> USCIS concludes there is substantial and probative evidence in the beneficiary's file to demonstrate that the Barnes marriage was a sham marriage that the beneficiary entered into in order to evade immigration law. While USCIS is not unsympathetic to the beneficiary's plight, and recognizes her marriage to you as

valid, USCIS, unfortunately, also *finds* that substantial and probative evidence in the file of her prior sham marriage bars approval of your petition for her.

(AR 237, ECF No. 48-3 at 18 (bold added).)

The bolded language above is significant. The first time the Field Director made a finding of substantial and probative evidence that Ms. Damaschin's marriage to Mr. Barnes was fraudulent was in her Decision denying Mr. Pitman's petition. In order to properly shift the burden of proof to Mr. Pitman, the Field Director was required to have made that finding in the NOID.

The BIA's Order affirming the USCIS Director's Decision was arbitrary and capricious because it failed to recognize that the USCIS had failed to follow its own regulations. The Tenth Circuit has "held that 'agencies are under an obligation to follow their own regulations, procedures, and precedents, or provide a rational explanation for their departure.'" *New Mexico Farm & Livestock Bureau v. United States Dep't of Interior*, 952 F.3d 1216, 1231 (10th Cir. 2020). "When an agency does not comply with its own regulations, it acts arbitrarily and capriciously." *Id; see also Cherokee Nation of Okla. v. Norton*, 389 F.3d 1074, 1078 (10th Cir. 2004) ("[The APA] require[s] agencies, on pain of being found to have acted arbitrarily and capriciously, to comply with their own regulations.").

The BIA acknowledged that "the Director issued [a] NOID on December 2, 2014, providing the petitioner an opportunity to respond to her findings, and the petitioner filed a response to the NOID which included affidavits from the beneficiary and Mr. Barnes." (AR 4, ECF No. 48-2 at 8.) And the BIA "agree[d] with the Director that the record contains the requisite substantial and probative evidence that the beneficiary entered her first marriage for the purpose of evading immigration laws, and the marriage was fraudulent." (AR 4, ECF No. 48-2 at 8.)

11

But the BIA omitted that the Director did not make any findings that there existed substantial and probative evidence of marriage fraud in the NOID. In so doing, the BIA failed to recognize that Mr. Pitman's "opportunity to respond to [the Director's] findings" was not a full opportunity. Mr. Pitman was only given an opportunity to respond to the Director's (mistaken) findings that Mr. Pitman had not met *his* burden of establishing that Ms. Damaschin's marriage to Mr. Barnes was bona fide. By failing to identify the evidence she believed constituted "substantial and probative" evidence of marriage fraud in the NOID, Mr. Pittman could not properly distinguish between those findings the Director considered to be merely "indicative of" fraud and those findings she would later find to be "substantial and probative." This forced Mr. Pitman to "chase a moving target"—a tactic the Supreme Court has recently viewed unfavorably. *C.f. Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1909 (2020) ("Permitting agencies to invoke belated justifications, on the other hand, can upset 'the orderly functioning of the process of review,' forcing both litigants and courts to chase a moving target.").

The BIA's Order completely ignored the fact that *Matter of Kahy* established that "[t]he initial burden of proof is on the government." *See Zerezghi*, 955 F.3d at 805 (citing *Kahy*, 19 I&N. Dec. at 806–07)). By failing to acknowledge the Director's numerous errors in her NOID, the BIA never considered whether the burden of proof ever properly shifted to Mr. Pitman. The BIA's own interpretation of its own regulation required the burden to shift to Mr. Pitman before the Government could deny the petition. By failing to acknowledge the legal errors in the Director's NOID, and by ignoring that a burden shift was a prerequisite to denial of the petition, the BIA did not comply with its own regulations. It therefore acted arbitrarily and capriciously. *See New Mexico Farm*, 952 F.3d at 1231.

The BIA's Order affirming the USCIS Director's Decision that the Director was barred by 8 U.S.C. § 1154(c) from approving the petition is VACATED.

II.    Defendants Are Ordered to Approve the I-130 Petition

Having decided that the BIA's Order was arbitrary and capricious, the question now is how to proceed. Is the BIA entitled to have the case remanded to allow a Field Director issue a second NOID that makes the necessary findings to have the burden shift to Mr. Pitman? As explained below, the BIA is not entitled to a second bite of the apple.

It is first important to remember that there are two distinct burdens at play here.

First, as always, "[t]he petitioner bears the burden of establishing eligibility for the benefit sought in an I-130 petition." *Mairykeeva v. Barr*, 378 F. Supp. 3d 391, 395 (E.D. Pa. 2019). As stated in the Field Director's Decision: "Generally, to demonstrate that an individual is eligible for approval as the beneficiary of a petition filed under INA 201(b), a petitioner must:"

> • Establish a bona fide relationship to certain alien relatives who wish to immigrate to the United States;
>
> • Establish the appropriate legal status (i.e., U.S. citizenship or lawful permanent residence) to submit a petition on the beneficiary's behalf.

(ECF No. 48-3 at 1.)

Normally, "[t]he USCIS determines whether the petitioner meets this burden using a preponderance of the evidence standard . . . ." *Mairykeeva*, 378 F. Supp. at 395–96. But here, Mr. Pitman and Ms. Damaschin entered into their marriage while Ms. Damaschin was in removal proceedings.[3] Thus, instead of the preponderance standard, Plaintiffs have the burden "by **clear and convincing evidence** to the satisfaction of the Attorney General that the marriage

---

[3] *See* AR 222, ECF No. 48-3 at 3 ("On July 31, 2008, removal proceedings were commenced against the beneficiary . . . . You married the beneficiary on June 5, 2010, while removal proceedings were still ongoing . . . .").)

was entered into in good faith and in accordance with the laws of the place where the marriage took place and the marriage was not entered into for the purpose of procuring the alien's admission as an immigrant . . . ." 8 U.S.C. § 1255(e)(3) (bold added); *see also In Re: Sophie Muthoni Isaac, Beneficiary of A Visa Petition Filed by Walter Ray Isaac, Petitioner*, No. : AXXX XX9 244 - DAL, 2009 WL 4639855, at *1 (DCBABR Nov. 17, 2009) ("The 'clear and convincing' standard applies to a marriage entered into by an alien during removal proceedings As the beneficiary was not in removal proceedings when the parties married, that standard is inapplicable here. The petitioner must prove the required elements by a preponderance of the evidence.").

Indeed, "[a]n alien who marries a United States citizen while in removal proceedings is subject to a statutory presumption that the marriage itself is fraudulent." *Barenboy v. Sec'y, U.S. Dep't of Homeland Sec.*, 411 F. App'x 512, 515 (3d Cir. 2010) (citations omitted)). "Unless this presumption is rebutted, a Form I–130 Petition filed on the alien's behalf may not be approved until the alien has resided outside the United States for a two-year period from the date of the marriage." *Id*. (citations omitted). "The presumption of fraud is successfully rebutted pursuant to the bona fide marriage exemption" if the alien meets her burden of establishing the clear and convincing standard discussed above. *Id*.

Second, as discussed at length above, the Government bears the initial burden of establishing the mandatory grounds for denial of the I-130 petition under 8 U.S.C. § 1154(c).

To summarize, Plaintiffs "have the burden to establish affirmative grounds for eligibility." *C.f.* Dan Kesselbrenner & Lory D. Rosenberg, *Immigration Law & Crimes*, § 10:23 (June 2020 Update). But Plaintiffs only have the burden to overcome the marriage fraud bar under 8 U.S.C. § 1154(c), (a mandatory bar) *if "*the evidence indicates that the bar applies."

14

*Immigration Law & Crimes*, § 10:23. "In effect, this creates a rebuttable presumption:" Plaintiffs are "presumed not subject to the mandatory bar unless the evidence indicates that it applies." *Id*.

"A presumption is a procedural rule of law, which affects the allocation of the burden of proof." *Id*. "The burden of proof consists of two parts: the burden of persuasion and the burden of production." *Id*. "The burden of persuasion is the burden to convince the factfinder that evidence supports a given proposition." *Id*. "This burden remains on the same party without shifting." *Id*. "In contrast, the burden of production is the obligation to come forward with the evidence at different points in the proceeding." *Id*. "This burden may shift between parties depending upon the evidence produced." *Id*.

8 C.F.R. § 204.2(a)(1)(ii), as interpreted by the BIA in *Matter of Kahy*, "establishes a rebuttable presumption in the context of a mandatory bar and thus places the initial burden of production on the [Government] to submit sufficient evidence to indicate that the mandatory bar applies." *Id*. "[I]f the [Government] does not meet this burden, the noncitizen is presumed not subject to the bar." *Id*. "However, if the [Government] provides sufficient evidence, the presumption disappears, and the burden of production shifts to the noncitizen to establish . . . that the mandatory bar does not apply." *Id*.

For the reasons stated above, the USCIS Director, by failing to "find" substantial and probative evidence of fraud in her NOID, failed to shift the burden to Mr. Pitman. Ms. Damaschin is therefore presumed to not be subject to the marriage fraud bar.

 The Government had the burden of production in the first instance. The court will not remand this case to the BIA to allow a Field Director to make additional findings sufficient to shift the burden to Mr. Pitman. Doing so would be to allow the Government an impermissible second bite at the apple. *C.f. United States v. Dickler*, 64 F.3d 818, 832 (3d Cir. 1995) ("[w]here

the government has the burden of production . . . its case should ordinarily have to stand or fall on the record it makes the first time around. It should not normally be afforded 'a second bite at the apple.'")); *c.f. United States v. Parker*, 30 F.3d 542, 553–54 (4th Cir. 1994) ("the prosecution has already been given one full and fair opportunity to offer whatever proof about Tonsler Park it could assemble. Having failed to seize that opportunity, the Government at resentencing should not be allowed to introduce additional evidence to prove that Tonsler Park contained a playground. One bite at the apple is enough.")).

Plaintiffs ask this court to "issue an order directing Defendants to approve Plaintiff Pitman's I-130 petition on behalf of Plaintiff Damaschin." (ECF No. 1 at 15.) As explained below, the court will grant that request.

As discussed above, because Ms. Damaschin was in removal proceedings when she married Mr. Pitman, Plaintiffs bear the burden of establishing  "by clear and convincing evidence ***to the satisfaction of the Attorney General*** that the marriage was entered into in good faith and in accordance with the laws of the place where the marriage took place and the marriage was not entered into for the purpose of procuring the alien's admission as an immigrant . . . ." 8 U.S.C. § 1255(e)(3) (emphases added). USCIS has already found that Plaintiffs have met that burden. (*See* AR 226, ECF No. 48-3 at 7 ("As stated in the NOID, USCIS finds that you have met the clear and convincing burden of proof to demonstrate that your marriage to the beneficiary is bona fide."); *see also* AR 237, ECF No. 48-3 at 18 ("While USCIS is not unsympathetic to the beneficiary's plight, and recognizes her marriage to you as valid . . . .."). As explained below, because USCIS's finding that Plaintiffs have met their burden to establish that their marriage is bona fide is a discretionary decision, this court very likely lacks the authority to review that finding and thus accepts it as true.

16

The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof," 5 U.S.C. § 702, unless review is precluded by statute or the decision at issue was "committed to agency discretion by law," 5 U.S.C. § 701(a). "In general, there is a 'strong presumption in favor of judicial review of administrative action.'" *Ruiz v. Mukasey*, 552 F.3d 269, 273 (2d. Cir. 2009). But, relevant here, "no court shall have jurisdiction to review . . . any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be *in the discretion of the Attorney General* or the Secretary of Homeland Security . . . ." 8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added).

Based on this court's research, it appears that most courts to have considered this issue have "concluded that federal courts lack jurisdiction to review a decision on the applicability of the bona fide marriage exemption because such a decision is discretionary." *See Poh v. Nielsen*, No. PWG-17-3825, 2019 WL 1002596, at *5 (D. Md. Mar. 1, 2019); *see also Barenboy v. Sec'y, U.S. Dep't of Homeland Sec.*, 411 F. App'x 512, 516 (3d Cir. 2010) ("Pursuant to § 1252(a)(2)(B)(ii), the District Court lacked jurisdiction to review such discretionary determinations."); *see also Mensah v. Riordan*, No. CV 12-11999-PBS, 2013 WL 12129603, at *8 (D. Mass. July 26, 2013) ("The language 'to the satisfaction of the Attorney General' leaves the decision on a bona fide marriage exception to the agency's discretion and renders the decision unreviewable by this Court.")); *see also Maldonado v. Holder*, No. 3:13-CV-492 JBA, 2015 WL 1097364, at *4 (D. Conn. Mar. 11, 2015) ("because decisions under § 1255(e)(3) are clearly discretionary, the Court is foreclosed by § 1252(a)(2)(B)(ii) from reviewing Defendants' denial of Plaintiffs' I–130 petition."); *but see Giza v. McAleenan*, No. 3:18-CV-00842 (JAM),

2019 WL 3752493, at *2 (D. Conn. Aug. 8, 2019) ("In light of the Government's reasons for its change of position and in light of the statutory language that requires a finding by the Attorney General of a specific fact ('good faith') by clear and convincing evidence, I conclude that— notwithstanding the statute's reference to the 'satisfaction of the Attorney General'—Congress did not intend to leave this particular determination to the general and non-reviewable discretion of the Attorney General.").

The court assumes without deciding that it would lack the authority to alter the USCIS Field Director's finding that Plaintiffs "met the clear and convincing burden of proof to demonstrate that [Mr. Pitman's] marriage to [Ms. Damaschin] is bona fide." (AR 226, ECF No. 48-3 at 7.) Likely lacking the authority to question this discretionary decision, the court accepts it as true. In the alternative, even if this court were to have the authority to review the USCIS Field Director's finding, the court would nevertheless agree that Plaintiffs have met their burden, "by **clear and convincing evidence** . . . that the marriage was entered into in good faith and in accordance with the laws of the place where the marriage took place and the marriage was not entered into for the purpose of procuring the alien's admission as an immigrant . . . ." 8 U.S.C. § 1255(e)(3) (bold added).

Mr. Pitman has therefore established a bona fide marriage to Ms. Damaschin. And the USCIS Field Director has already found that Mr. Pitman is a United States citizen. (*See* AR 224, ECF No. 48-3 at 5 ("In this case, although the beneficiary had conceded the allegations in the NTA, she might also have been statutorily eligible to adjust status based on her bona fide marriage to either you or Mr. Barnes, ***both U.S. citizens***.") (emphases added)). Thus, Mr. Pitman has already established both a bona fide relationship to Ms. Damaschin and his appropriate legal

status as a U.S. citizen. Plaintiffs have therefore met their burden of establishing eligibility for the benefit sought in the I-130.

Because the Government failed to meet its burden of establishing the mandatory grounds for denial of the I-130 petition under 8 U.S.C. § 1154(c), the Government has no basis to deny the I-130 petition. The court orders Defendants to approve Plaintiff Pitman's I-130 petition on behalf of Plaintiff Damaschin.

<u>Conclusion</u>

I.   The BIA's Order affirming the USCIS Director's Decision that the Director was barred by 8 U.S.C. § 1154(c) from approving the petition is arbitrary and capricious. The BIA's Order is VACATED.

II.  The Government bore the initial burden of production to submit substantial and probative evidence that the Barnes marriage was fraudulent. The Government failed to meet its burden in the first instance. The court declines to afford the Government a second bite at the apple.

III. The USCIS Field Director already found that Plaintiffs met their burden, by clear and convincing evidence, to establish that their marriage is bona fide. Plaintiffs have met their burden of establishing eligibility for the benefit sought in the I-130. The court ORDERS Defendants to approve Plaintiff Pitman's I-130 petition on behalf of Plaintiff Damaschin.

DATED this 10th day of September, 2020

BY THE COURT:

Clark Waddoups
United States District Judge