IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TYLER PITMAN and LILIANA DAMASCHIN,<br><br>                    Plaintiffs,<br><br>      vs.<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES ("USCIS"), et al.,<br><br>                    Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO RECONSIDER**<br><br>Case No. 2:17-cv-00166-CW<br><br>Judge Clark Waddoups |

Before the court is Defendants' motion to reconsider the court's September 10, 2020 decision vacating the Board of Immigration Appeals' (BIA) order affirming Defendant United States Citizenship and Immigration Services' ("USCIS") denial of Plaintiff Tyler Pitman's Form I-130 Petition for Alien Relative, which was filed for the benefit of Plaintiff Liliana Damaschin, and ordering that Defendants approve the petition. (ECF No. 96.)

Defendants advance two grounds for reconsidering and reversing the court's September 2020 decision. First, Defendants argue that the court erred by failing to consider whether the agency's error was prejudicial or harmless. Second, Defendants argue that, even assuming the agency's error was prejudicial to Plaintiffs, the court should have remanded the case to the BIA for further proceedings instead of ordering Defendants to grant Mr. Pitman's I-130 petition.

Because Defendants waived their harmless error defense by failing to raise it before judgment was entered, and failed to demonstrate that it was clearly erroneous for the court not to

consider harmless error sua sponte, the court denies Defendants' motion to the extent it seeks reconsideration of the court's original decision on the grounds that Defendants' errors were harmless.

After carefully considering Defendants' arguments regarding remand, however, the court is persuaded that the proper remedy in this case is to remand the case to the BIA for application of the proper procedures and legal standard to Mr. Pitman's I-130 petition. Accordingly, the court will grant Defendants' motion to the extent it seeks reconsideration of the court's order directing that Mr. Pitman's I-130 petition be approved and amend its decision to require a limited remand of the case to the BIA for application of the proper procedures and legal standard to the facts as they exist on the current record.

## Background

This case has a lengthy and complex factual and procedural history, which the court will summarize here for context.

In November 2007, Plaintiff Liliana Damaschin, a citizen of Moldova, entered the United States on a six-month temporary worker visa. Ms. Damaschin overstayed her visa.

In July 2008, Ms. Damaschin was arrested in Wyoming for driving under the influence. Shortly after her arrest, Ms. Damaschin received notice that she was required to appear in front of an immigration judge for initiation of proceedings seeking her removal from the United States.

At some point after her arrest and after receiving notice of her removal proceedings, Ms. Damaschin was introduced to Robert Barnes by a mutual friend. Ms. Damaschin lived in Jackson, Wyoming and Mr. Barnes lived in Arizona, where he was receiving treatment from the Veterans Health Administration for Post-Traumatic Stress Disorder relating to his service in the Vietnam

War. Ms. Damaschin and Mr. Barnes began to develop a friendship. Because they lived hundreds of miles apart, however, most of their communications with each other were by telephone. They did meet in person, however, a handful of times between July 2008 and January 2009.

In January 2009, Ms. Damaschin and Mr. Barnes met together with some mutual friends in Las Vegas, Nevada. On January 3, 2009, while the couple were in Las Vegas, Mr. Barnes proposed to Ms. Damaschin and the two were married the same day. Within a few days after the marriage ceremony, however, Mr. Barnes returned to Arizona and Ms. Damaschin returned to Wyoming. Ms. Damaschin and Mr. Barnes continued to live apart for several months. Eventually, however, Mr. Barnes left Arizona and moved to Afton, Wyoming, which is about 80 miles from Ms. Damaschin's home in Jackson.

Ms. Damaschin and Mr. Barnes' marriage was unconventional. Ms. Damaschin and Mr. Barnes never lived in the same town, or shared the same home, during their marriage. And both Ms. Damaschin and Mr. Barnes admit that the marriage was never consummated. Mr. Barnes did, however, sleep on the couch in Ms. Damaschin's apartment a couple of times. Ms. Damaschin says that she did not want to move in with Mr. Barnes because he was a heavy smoker. And the couple claim that the marriage, which they acknowledge was non-traditional, was never consummated because Mr. Barnes had issues with intimacy stemming from his PTSD. The couple also never co-mingled any of their property, never filed joint tax returns, and largely conducted separate lives, although they both claim they visited each other often after Mr. Barnes moved to Wyoming and spoke regularly on the telephone.

In January 2009, a few days after her marriage to Mr. Barnes, Ms. Damaschin appeared in front of an immigration judge in Helena, Montana for a hearing relating to the removal proceedings

3

initiated against her. During the hearing, Ms. Damaschin, who was not represented by counsel at the time, indicated that she intended to seek an adjustment of her immigration status based on her recent marriage to Mr. Barnes. The immigration judge, therefore, granted a continuance of Ms. Damaschin's removal proceedings to allow her to seek to adjust her status.

On March 25, 2009, Mr. Barnes filed a Form I-130 Petition for Alien Relative (the "Barnes Petition"), which sought an immigrant visa on behalf of Ms. Damaschin based on her marriage to Mr. Barnes. Once the Barnes Petition was filed, Ms. Damaschin's removal proceedings were further continued for several months to allow USCIS to adjudicate the petition.

Although Ms. Damaschin and Mr. Barnes have acknowledged that they never lived together before, during, or after their marriage, the Barnes Petition, which was prepared by Ms. Damaschin and signed by Mr. Barnes, indicates that the couple had lived together at Ms. Damaschin's residence in Jackson, Wyoming since October 2008. On a biographical information form submitted to USCIS contemporaneously with the Barnes Petition, Mr. Barnes represented that he and Ms. Damaschin had lived together in Jackson, Wyoming since January 2009.

In or around August 2009, Ms. Damaschin met Plaintiff Tyler Pitman, with whom she eventually developed a romantic relationship. Eventually, Ms. Damaschin became pregnant with Mr. Pitman's child and filed for divorce from Mr. Barnes. Ms. Damaschin testified that she did not tell Mr. Barnes about her relationship with Mr. Pitman before filing for divorce.

On May 13, 2010, Ms. Damaschin appeared before an immigration judge in Salt Lake City, Utah, after successfully moving to have her removal proceedings transferred from the immigration court in Helena, Montana. During the May 2010 hearing, Ms. Damaschin, who was then represented by counsel, informed the judge of her relationship with Mr. Pitman, her pending

divorce from Mr. Barnes, and her plan to marry Mr. Pitman after her divorce from Mr. Barnes was finalized. Ms. Damaschin asked the court to grant a further continuance of her removal proceedings to allow her time to finalize her divorce from Mr. Barnes and marry Mr. Pitman so that Mr. Pitman could file a new I-130 Petition for Alien Relative for consideration by USCIS.

The government opposed Ms. Damaschin's request for a continuance, arguing that it had concerns that Ms. Damaschin's marriage to Mr. Barnes may have been fraudulent. Under Section 204(c) of the Immigration and Nationality Act ("INA"), sometimes referred to as the "marriage fraud bar," no immigrant visa petition may be approved if an alien has previously sought to be accorded status as the spouse of a citizen of the United States "by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws." 8 U.S.C. § 1154(c).

The immigration court agreed that Ms. Damaschin's motion for a further continuance of her removal proceedings turned on whether the anticipated I-130 petition to be filed by Mr. Pitman could be approved in light of Section 204(c)'s marriage fraud bar. Accordingly, it held an evidentiary hearing to take evidence regarding the bona fides of Ms. Damaschin's marriage to Mr. Barnes. During the hearing, the court heard testimony from both Ms. Damaschin and Mr. Barnes.

Ultimately, the immigration court concluded that Ms. Damaschin had not established that her marriage to Mr. Barnes was bona fide and, therefore, could not meet the standard for obtaining a further continuance of her removal proceedings. The court denied the motion for a continuance and ordered Ms. Damaschin removed from the United States. The immigration court's decision was ultimately affirmed by the Tenth Circuit. *See Damaschin v. Holder*, 523 F. App'x 527 (10th Cir. 2013) (unpublished).

In April 2013, Mr. Pitman filed the I-130 petition (the "Pitman Petition") that is the subject of this action.[1] On December 2, 2014, in accordance with its procedures, USCIS issued a Notice of Intent to Deny ("NOID") Mr. Pitman's I-130 petition, finding that Ms. Damaschin failed to demonstrate that her prior marriage was bona fide and not subject to the marriage fraud bar under Section 204(c) and that USCIS thus intended to deny the Pitman Petition based on the marriage fraud bar. In support of the notice, USCIS cited evidence derived from Damaschin's earlier removal proceedings, including testimony and documentary evidence offered in support of the motion to continue that was previously denied by immigration court. According to USCIS, this evidence was "*indicative of probable marriage fraud* as prohibited under section 204(c) of the INA." (ECF No. 48-5 at 33.)

Importantly, however, the NOID did not indicate that USCIS had made any finding that the Barnes-Damaschin marriage was actually fraudulent. Instead, it repeatedly stated that Mr. Pitman had the burden to show, by *clear and convincing evidence*, that that the Barnes-Damaschin marriage was bona fide and cited his failure to do so as the reason for USCIS's intent to deny the petition.

In response, Mr. Pitman argued that USCIS had applied the incorrect standard when reviewing the Pitman Petition. Specifically, Mr. Pitman argued that USCIS had the initial burden to find that there was "substantial and probative evidence" of marriage fraud and that it was only after such a finding had been made that the burden shifted to Mr. Pitman to show that the Barnes-Damaschin marriage was bona fide. Mr. Pitman also argued that the evidence cited in the NOID

---

[1]     Mr. Pitman had also filed a previous I-130 petition that was denied by USCIS, which is not the subject of this action.

did not amount to substantial and probative evidence of marriage fraud, addressed the specific evidence referenced in the NOID, contested alleged inconsistencies in testimony referenced in the NOID, and submitted additional affidavits from Mr. Barnes and Ms. Damaschin.

On April 9, 2015, USCIS issued its final decision denying the Pitman Petition. In the decision, USCIS indicated, for the first time, that it found "that substantial and probative evidence in the file of [Damaschin's] prior sham marriage bars approval of [Pitman's] petition for her."

Mr. Pitman appealed USCIS's decision to the BIA, who issued a brief opinion affirming USCIS's decision on May 26, 2016. The BIA's decision largely adopted the reasoning stated in USCIS's final decision issued in April 2015.

On October 17, 2016, Mr. Pitman and Ms. Damaschin filed the current action challenging the BIA's decision to uphold USCIS's denial of the Pitman Petition under the Administrative Procedures Act ("APA").  Plaintiffs asserted that the BIA's decision was arbitrary and capricious because USCIS's denial of the Pitman Petition was not supported by substantial evidence.

On September 10, 2020, this court entered a memorandum decision and order vacating the BIA's order affirming the denial of the Pitman Petition and ordering USCIS to grant the petition. (ECF No. 94.)

In the decision, the court concluded that USCIS's decision to deny the Pitman Petition was arbitrary and capricious because the decision "failed to recognize that the Director never 'found' substantial and probative evidence of marriage fraud in the Notice of Intent to Deny ('NOID')," a prerequisite for denial of an I-130 petition under USCIS's own established procedures. (*Id.* at 6.) As a result, the burden to prove that the Barnes-Damaschin marriage was bona fide never shifted to Mr. Pitman, which is "a necessary step before USCIS can properly deny a petition under 8

U.S.C. § 1154(c)." (*Id*. at 7.) The court concluded that it was clear from the NOID that USCIS "incorrectly assumed that it was completely Mr. Pitman's burden to demonstrate that 8 U.S.C. § 1154(c) did not bar approval of the petition" and that the NOID's conclusion that the evidence was merely "indicative of probable marriage fraud" was insufficient to shift the burden to Mr. Pitman. (*Id*. at 9.) As a result, the court determined that USCIS failed to follow its own regulations, making the decision to deny the Pitman Petition arbitrary and capricious. (*Id*. at 12.)

The court's September 2020 memorandum decision also analyzed whether it was appropriate to order USCIS to grant the Pitman Petition or remand the case "to allow a Field Director [to] issue a second NOID that makes the necessary finding to have the burden shift to Mr. Pitman." (*Id*. at 13.) The court concluded that because (1) there was no dispute that the Pitman-Damaschin marriage was bona fide and that Mr. Pitman was a United States citizen and (2) there was a rebuttable presumption that the marriage fraud bar does not apply in the absence of a finding by USCIS, Plaintiffs had established their eligibility for the benefits sought under the Pitman Petition. (*Id*. at 13-19.) Citing cases from the Third and Fourth circuits, the court also found that remanding the petition to allow the USCIS Field Director to make additional findings would "allow the government an impermissible second bite at the apple." (*Id*. at 15-19.) Therefore, the court concluded that USCIS had "no basis to deny the I-130 petition" and ordered that the petition be granted. (*Id*. at 19.)

On October 8, 2020, 28 days after judgment was entered in this case, USCIS filed the current motion to reconsider the court's September 2020. (ECF No. 96.)

## Legal Standard

Defendants' motion seeks reconsideration of the court's September 2020 decision and order pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.[2] Rule 59(e) allows a party to seek to alter or amend a judgment by filing a motion "no later than 28 days after the entry of the judgment." Grounds for granting a Rule 59(e) motion for reconsideration include "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1203 (10th Cir. 2018) (quoting *Servant of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)). Thus, it is appropriate to grant relief under Rule 59(e) where the court has "misapprehended the facts, a party's position, or the controlling law." *Id*. It is not appropriate, however, to "revisit issues already addressed or advance arguments that could have been raised in prior briefing" in the context of a Rule 59(e) motion. *Id*.

## Analysis

In their motion, Defendants seek reconsideration of the court's September 2020 decision on the grounds that it was clear error for the court to (1) fail to consider whether USCIS's failure to make necessary findings in the NOID was prejudicial or harmless and (2) order Defendants to approve Mr. Pitman's I-130 petition rather than remand the case to the BIA for further proceedings.

---

[2] Defendants also contend, in the alternative, that the court can reconsider and amend its prior judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. (Mot. at 2, ECF No. 96.) This argument, however, is presented in a single sentence at the outset of Defendants' motion and is not supported by any legal or factual analysis. Indeed, it appears that Defendants abandoned their Rule 60(b) argument, since there is no reference to it in Defendants' reply memorandum. (*See generally* Reply, ECF No. 102.) Accordingly, the court finds that Defendants' Rule 60(b) argument is waived and will limit its analysis to whether reconsideration is justified under the standard governing motions brought pursuant to Rule 59(e).

As discussed further herein, Defendants' harmless error argument fails because (a) Defendants failed to raise it before judgment was entered in this action and (b) the court was not required to consider harmless error sua sponte. Thus, Defendants have not presented an adequate basis for reconsidering the court's order vacating the BIA's decision.

The court is persuaded, however, that its original order directing Defendants to approve Mr. Pitman's petition was not an appropriate remedy in this case. Accordingly, the court will grant Defendants' motion to the extent it seeks to have this case remanded to the BIA for further proceedings consistent with this court's decisions.

## I.       Harmless Error

In their motion, Defendants correctly note that the APA directs the court, when reviewing an agency action, to take due account of "the rule of prejudicial error." 5 U.S.C. § 706. Construing nearly identical language in a related statute, the Supreme Court has explained that the APA's requirement that courts consider whether an agency's error was prejudicial requires courts to "apply the same kind of 'harmless-error' rule that courts ordinarily apply in civil cases." *See Shinseki v. Sanders*, 556 U.S. 396, 406 (2009).

Thus, there is no debate that harmless error was a defense available to Defendants in this case. Because Defendants did not raise their harmless error defense before judgment was entered, however, and because it was not clear error for the court to decline to consider whether the agency's error was harmless sua sponte, it would be inappropriate for the court to consider harmless error for the first time in the context of a Rule 59(e) motion.

A.      <u>Defendants Waived Their Harmless Error Defense</u>.

The Tenth Circuit has long held that a party can waive or forfeit a harmless error defense by failing to raise it before the trial court, even in the face of a statute or rule requiring harmless error review.

For example, in *United States v. Torrez-Ortega*, 184 F.3d 1128, 1132-35 (10th Cir. 1999), the Tenth Circuit held that two criminal defendants' rights under the Confrontation Clause of the Sixth Amendment were violated when the government presented grand jury testimony at trial of a witness who refused to answer questions on the basis of an illegitimate claim of privilege.  After concluding that the defendants' constitutional rights had been violated, the court proceeded to consider whether the error could be excused under the harmless error doctrine. Because the government had not asserted that the erroneous admission of the grand jury testimony at issue was harmless to the defendants the testimony was offered against, the court, relying on a prior decision from the Seventh Circuit, held that the government had waived its harmless error arguments, even though Rule 52(a) of the Federal Rules of Criminal Procedure requires that harmless error be disregarded. *Id*. at 1136 (citing *United States v. Gionannetti*, 928 F.2d 225, 227 (7th Cir. 1991)).

Subsequent decisions from the Tenth Circuit have reaffirmed that a party can waive or forfeit a harmless error argument by failing to raise it at the appropriate time, including in the context of APA review. *See, e.g.*, *WildEarth Guardians v. United States Bureau of Land Mgmt.*, 870 F.3d 1222, 1239 (10th Cir. 2017) (holding that the BLM had forfeited any harmless error claim, in a case brought under the APA, by failing to argue it before the district court) (citation omitted); *United States v. Samaniego*, 187 F.3d 1222, 1225 (10th Cir. 1999) (the government's

"silence on the issue of harmlessness and the failure to provide an adequate record to review suggests acquiescence in reversal").

In this case, Defendants never argued that its error in failing to make a finding in the NOID that there was substantial and probative evidence that Ms. Damaschin's purported marriage to Mr. Barnes was fraudulent was harmless until after the court had entered judgment. Accordingly, Defendants waived their harmless error argument, and the court was not required to conduct a harmless error analysis in its initial analysis of Plaintiff's APA claim. Moreover, because Defendants' harmless error arguments could have been raised before judgment, it is inappropriate for Defendants to raise them for the first time in the context of a Rule 59(e) motion. *See Alpenglow Botanicals*, 894 F.3d at 1203.

   B.    It Was Not Plain Error for the Court to Forego Consideration of Harmless Error Sua Sponte.

As discussed above, Defendants' failure to raise its harmless error arguments before judgment constituted a waiver and eliminated any requirement that the court conduct a formal harmless error review in this case. The Tenth Circuit has held, however, that such a waiver is not binding on the court and that it is appropriate, in certain circumstances, for the court to consider harmless error sua sponte. *See Samaniego*, 187 F.3d at 1224 (quoting *Torrez-Ortega*, 184 F.3d at 1136) ("Although the government makes no assertion whatsoever that the admission of these summaries without adequate foundation was harmless error, this court may in its discretion 'initiate harmless error review in an appropriate case.'"). Thus, the court must also consider whether it was clear error not to initiate a harmless error analysis before entering judgment in this case.

In considering whether to initiate harmless error review sua sponte, the Tenth Circuit has identified three factors for consideration: (1) the length and complexity of the record; (2) whether the harmlessness of the errors is certain or debatable; and (3) whether a reversal would result in protracted, costly, and futile proceedings in the district court. *Torrez-Ortega*, 184 F.3d at 1136 (citing *Giovannetti*, 928 F.2d at 227). The Tenth Circuit has suggested, however, that the third factor is likely irrelevant since costs and the potential for protracted proceedings cannot preclude reversal where an error is not harmless. *Samaniego*, 187 F.3d at 1225 n.2. In her dissent in *Samaniego*, Judge Tacha also suggested that the first factor should not weigh heavily in the analysis of whether harmless error review should be initiated sua sponte. *Id*. at 1227 (Tacha, J., dissenting) (a "court cannot be excused from its duty to study a record, even in exercising the broadest scope of its discretionary review, just because a record is lengthy and/or complicated."). The court agrees and will focus its analysis primarily on the second factor—whether the harmlessness of Defendants' errors is certain or debatable.

Here, Defendants' claim that its error was harmless is, at a minimum, debatable. Defendants' harmless error claim is premised on two purported facts: (1) that "Plaintiffs were on notice of the derogatory evidence of marriage fraud and had a full opportunity to rebut it" and (2) that "[i]n its final decision, USCIS considered the evidence submitted by Plaintiffs and concluded that substantial and probative evidence of marriage fraud existed." (*See* Mot. at 6-7.)

Accepting for the sake of argument that these premises are true, the court has serious doubts regarding whether USCIS's handling of Mr. Pitman's I-130 petition was proper even if its failure to make appropriate findings in the NOID is overlooked. Indeed, while Defendants are correct that USCIS purported to find that substantial and probative evidence of marriage fraud existed in its

final decision denying Mr. Pitman's petition, it appears that even at that stage USCIS failed to apply the proper legal standard.

In its final decision, USCIS acknowledged it had the burden to find substantial and probative of marriage fraud before denying Mr. Pitman's petition. (ECF No. 48-3 at 7.) In discussing that standard, however, USCIS relied on the "substantial evidence" standard that is applied by appellate courts, concluding that a substantial and probative evidence finding in the I-130 context required only "more than a scintilla" of evidence or "evidence a reasonable mind would find adequate to support a conclusion." (*Id*. (citing appellate court decisions defining "substantial evidence").)

In *Matter of Singh*, 27 I & N Dec. 598, 604 (BIA 2019), however, the BIA expressly rejected application of the "substantial evidence" standard of review that is applied in appellate court cases to the I-130 context. Instead, the BIA concluded that, "[g]iven that the consequences of engaging in marriage fraud under section 204(c) of the [INA] is a permanent bar to the approval of any future visa petition, the evidence of fraud must be relatively high to trigger the bar." *Id*. at 607. Specifically, the BIA held that, to establish marriage fraud, USCIS must find that it is "more than probably true that the marriage is fraudulent," a degree of proof that "should be higher than a preponderance of the evidence and closer to clear and convincing evidence." *Id*.

It appears that the heightened standard set forth in *Singh* was never applied by USCIS to the Pitman Petition at any stage of its adjudication. Because Mr. Pitman's petition was never reviewed under the proper standard of proof, the court cannot conclude that Defendants' errors were clearly harmless.

Moreover, because the proper standard of proof has never been applied in this case, conducting a formal harmless error review would likely require the court to apply the proper substantial and probative evidence standard, as set forth in *Singh*, in the first instance. Doing so, however, would run afoul of the Supreme Court's holding in *SEC v. Chenery Corp.*, 318 U.S. 80 (1943).

In *Chenery*, the Supreme Court held that an agency's order "may not stand if the agency has misconceived the law." *Id*. at 94. Moreover, "an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained." *Id*. at 95. In other words, when reviewing an agencies decision under the APA, *Chenery* requires the court to limit its analysis to the grounds that were relied on by the agency when it made its decision. Under *Chenery*, the court cannot uphold an agency's action on the basis of the agency's post hoc justification for the action, regardless of the merits of that justification.

The Tenth Circuit has recognized that "to the extent a harmless-error determination rests on legal or evidentiary matters not considered by [an agency], it risks violating the general rule against post hoc justification of administrative action recognized in [*Chenery*]." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). Thus, the Tenth Circuit has suggested that harmless error can only justify upholding an erroneous agency action in such circumstances where, based on the material that was considered by the agency, the court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *See id*. Otherwise, excusing the agency's errors "would be an improper exercise in judicial factfinding rather than a proper application of harmless-error principles." *Id*.

Here, the court cannot confidently say that no reasonable factfinder would find an absence of substantial and probative evidence of marriage fraud if the correct standard of proof, as set forth in *Singh*, were applied. Accordingly, relying on harmless error to affirm the BIA's decision in this case would violate the principles set forth in *Chenery*.

## II.    Remedy

Defendants' motion also asks the court to reconsider the remedy imposed by the court. Defendants argue that it was clear error for the court to order Defendants to approve the Pitman Petition and that the law, instead, required the court to remand the petition to the BIA for further proceedings consistent with the court's order. After careful consideration, the court agrees that remanding the petition to the BIA is the proper remedy in this case.

Defendants are correct that, as a general matter, when an agency errs in making a decision that is entrusted to its judgment, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *I.N.S. v. Orlando Ventura*, 537 U.S. 12, 16-17 (2002) (per curiam). Thus, except in rare circumstances, federal courts generally remand erroneous agency decisions. *See, e.g.*, *Negusie v. Holder*, 555 U.S. 511, 523-24 (2009) (remanding case to allow BIA to interpret statute in first instance); *Chenery*, 318 U.S. at 95 (remanding case to SEC for evaluation, in first instance, of alternative grounds supporting decision); *Sosa-Valenzuela v. Holder*, 692 F.3d 1103, 1114 (10th Cir. 2021) (remanding to BIA for application of correct legal standard); *Weight Loss Healthcare Centers of Am., Inc. v. Off. of Pers. Mgmt.*, 655 F.3d 1202, 1211–12 (10th Cir. 2011) (concluding that case "must" be remanded to the Office of Personnel Management where agency failed to explain why it believed that certain health insurance plan reimbursement calculations were accurate); *Mickeviciute v. I.N.S.*, 327 F.3d 1159,

1163 (10th Cir. 2003) (remanding to BIA to specify which, of three reasons, it relied on to support its decision).

In its original ruling, the court declined to remand the case to the BIA, expressing concern that remanding to the BIA would unfairly allow the government a second opportunity to make additional findings that were sufficient to shift the burden to Mr. Pitman to prove that Ms. Damaschin's prior marriage to Mr. Barnes was bona fide. Defendants argue that the cases the court relied on in supporting this decision are criminal cases that have no application in the APA context. (Mot. at 10.)

While Defendants are correct that the cases the court relied on in declining to remand this case to the BIA in the first instance were not decided against the backdrop of the APA, there is case law supporting an application of the same reasoning in the APA context. *See, e.g.*, *Zhu v. Gonzales*, 493 F.3d 588, 602 (5th Cir. 2007) ("[T]he BIA has now had two opportunities to address the legal and factual issues that are again before this court; we need not give it a third bite at this apple."); *He v. Ashcroft*, 328 F.3d 593, 604 (9th Cir. 2003) ("The INS, having lost this appeal, should not have repeated opportunities to show that Mr. He is not credible any more than Mr. He, had he lost, should have an opportunity for remand and further proceedings to establish his credibility."). *But see Castaneda-Castillo v. Gonzales*, 488 F.3d 17, 25 (1st Cir. 2007) ("[O]utside criminal prosecutions governed by double jeopardy principles, second bites are routine in litigation. If the agency decision is flawed by mistaken legal premises, unsustainable subsidiary findings, or doubtful reasoning, remanding to give the agency an opportunity to cure the error is the *ordinary* course.") (italics in original); *Chen v. U.S. Dep't of Just.*, 426 F.3d 104, 116-17 (2d

Cir. 2005) ("[W]e find *He* to be in tension with the Supreme Court's explanation in *Ventura* for remanding 'except in rare circumstances.'").

Other federal courts have found exceptions to the general remand rule in a variety of circumstances, such as where remand would be futile, *see, e.g., Hussain v. Gonzales*, 477 F.3d 153, 158 (4th Cir. 2007) ("[T]o remand this matter to the Board for further consideration would serve no useful purpose."), where the error was procedural in nature, *see, e.g., Calle v. U.S. Att'y Gen.*, 504 F.3d 1324, 1330 (11th Cir. 2007) ("It is rather an objective, procedural inquiry: she either specified errors and supported them with pertinent authority, or she did not. Thus, in these 'rare circumstances,' we feel comfortable deciding the issue left unresolved by the BIA in the first instance."), or where the agency had already considered the issue, *see, e.g., Almaghzar v. Gonzales*, 457 F.3d 915, 923 n.11 (9th Cir. 2006) ("Neither *Ventura* nor *Thomas* requires us to remand an issue to the agency when the agency has already considered the issue.").

To the court's knowledge, however, the Tenth Circuit has never found an exception to the general rule that, in APA cases, the remedy for administrative errors is to remand the case to the agency to cure the error. The Tenth Circuit has applied the remand rule broadly to require remand in cases that other circuits may find it appropriate to rule on directly, rather than give the agency an opportunity to fix their mistakes. The court therefore concludes that, under current Tenth Circuit precedent, the proper remedy for Defendants' errors in its adjudication of Mr. Pitman's I-130 petition is to remand the case to the BIA for application of the correct procedures and legal standards to the petition.

The court, however, remains concerned that granting an unfettered remand of the case might unfairly allow USCIS an opportunity to conduct further investigation to supplement the

record and bolster a finding that there is substantial and probative evidence of marriage fraud in this case. Defendants' motion, however, is premised on the assertion that there is sufficient evidence in the existing record to support a finding of marriage fraud under the proper standard. If so, then no further investigation by USCIS should be necessary. Therefore, given the lengthy history of this case and the fact that USCIS has already had a full and fair opportunity to investigate the possibility of marriage fraud, the court will limit the scope of its remand order to require Defendants to readjudicate Mr. Pitman's I-130 based on the facts that exist in the current record. If USCIS concludes that the facts in the existing record are sufficient to support a finding that substantial and probative evidence of marriage fraud exists, under the standard of proof set forth in *Singh*, it should follow its regular procedures of issuing a new NOID to Mr. Pitman that includes USCIS's findings. If a new NOID is issued, Mr. Pitman shall have the opportunity to respond to USCIS's findings and offer supplemental evidence to rebut them.[3]

## Conclusion

For the reasons stated herein, the court grants-in-part and denies-in-part Defendants' motion for reconsideration. (ECF No. 96.) Defendants' motion is denied to the extent it seeks reconsideration of the court's order vacating the BIA's decision to uphold USCIS's denial of Mr. Pitman's I-130 petition. The motion is granted, however, to the extent it seeks an amendment of the court's order requiring Defendants to approve the Pitman Petition. Upon reconsideration, the court amends its prior order and removes the requirement that Defendants approve Mr. Pitman's

---

[3]     Because, as a result of USCIS's error in not issuing a proper NOID in the first instance, Mr. Pitman has never had a full and fair opportunity to respond to USCIS's assertions of marriage fraud, he should not be precluded, on remand, from offering additional evidence outside the record to rebut USCIS's findings if a new NOID is issued.

I-130 petition without further consideration. Instead, the court hereby ORDERS that the case be remanded to the BIA for further proceedings consistent with court's decisions. On remand, Defendants shall readjudicate Mr. Pitman's I-130 petition based solely on evidence that is in the existing record.

 DATED this 23rd day of June, 2022.

BY THE COURT:

_____
The Honorable Clark Waddoups
United States District Court Judge
